IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

TANYA M. LEGG,

    Petitioner,

v.                                              Case No. 4:23-cv-101/WS/MAL

WARDEN GABBY,
F.C.I. TALLAHASSEE

    Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Tanya Legg initiated this case in March of 2023 by filing a petition for writ of habeas corpus under 28 U.S.C. § 2241. In May of 2023, she filed an amended petition claiming (1) she is eligible for sentencing credits under the First Step Act (FSA) and (2) she has been improperly detained in a Federal Correctional Institution when she is eligible for placement in a camp. ECF No. 10 at 3. This case is before me on the Warden's response in opposition to the amended § 2241 petition. ECF No. 13. Legg did not file a reply, despite having been afforded the opportunity to do so.

After careful consideration of the petition, the Warden's response, and relevant law, I recommend the § 2241 petition be denied because Legg did not

exhaust her administrative remedies before filing her petition and her claims are otherwise without merit.

## I. BACKGROUND

In December of 2020, Petitioner Legg was sentenced in the Middle District of Florida, Case 6:19cr224-WWB-EJK, to a term of 168 months' imprisonment after pleading guilty to bank robbery in violation of 18 U.S.C. §§ 2113(a) and 2 and aiding and abetting the use, carrying or brandishing of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c) and 2. She is currently in custody at the Federal Correctional Institution in Tallahassee, Florida with a projected release date of October 21, 2031. *See* https://www.bop.gov/inmateloc/.

## II. DISCUSSION

In her amended petition, dated May 1, 2023, Legg raises two grounds for relief. First, she claims the Bureau of Prisons (BOP) has misclassified her as being unable to receive FSA credits due to her offenses of conviction. ECF No. 1 at 3. Second, she claims because the BOP has misclassified her convictions, she continues to be improperly detained at FCI Tallahassee although she is eligible for placement in a camp. *Id.* In response to the questions about exhaustion of administrative remedies, as to each ground for relief she states that she received "no response from the Warden." *Id.* at 3-4.

In his response the Warden contends the amended petition is subject to dismissal because Legg did not properly exhaust her administrative remedies. ECF No. 13. The Warden further notes that even if she had exhausted, Legg is statutorily barred from earning FSA credit due to her current convictions, and the BOP has not abused its discretion by assigning her to an FCI rather than a Camp. Legg has presented nothing to rebut the Warden's response.

**A. Exhaustion is required before filing a § 2241 petition.**

Prisoners are required to exhaust their administrative remedies before filing a § 2241 petition. *Santiago-Lugo v. Warden*, 785 F.3d 467, 471, 474-75 (11th Cir. 2015). Failure to exhaust is not a jurisdictional defect; rather, it is a defense that a respondent may assert, or choose to waive. *Id.* Respondent has not waived the defense in this case.

The BOP has the exclusive authority to compute sentence credit awards after sentencing. *Rodriguez v. Lamer*, 60 F.3d 745, 747 (11th Cir. 1995). As with other § 2241 claims, an inmate who wishes to challenge the BOP's sentencing credit calculations "must typically exhaust his or her administrative remedies with the BOP" before filing a § 2241 petition. *Id*; *see also Jaimes v. United States*, 168 F. App'x 356, 358-59 (11th Cir. 2006) (affirming dismissal of § 2241 petition for failure to exhaust because inmate sought to challenge the computation of sentence

credits without first going through the BOP's administrative remedy procedure); *see also Rey v. Warden, FCC Coleman-Low*, 359 F. App'x 88, 91 (11th Cir. 2009) (affirming denial of § 2241 challenging the BOP's calculation of credit for time served because petitioner failed to exhaust administrative remedies).

To properly exhaust administrative remedies, an inmate must comply with the prison's deadlines and procedural rules. *Blevins v. FCI Hazelton Warden,* 819 F. App'x 853, 856 (11th Cir. 2020); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). To that end, the BOP has an administrative remedy procedure that allows an inmate to raise issues related to any aspect of imprisonment. 28 C.F.R. § 542.10 *et seq*. The BOP's administrative remedy procedure is a multi-tier system. *See* 28 C.F.R. §§ 542.10-542.19. Before seeking formal review, an inmate generally must first attempt to resolve the matter informally by presenting her complaint to staff on a form commonly referred to as a BP-8. 28 C.F.R. § 542.13(a). If informal resolution is unsuccessful, the inmate may then initiate the formal review process.

The full, formal BOP administrative remedy procedure has three steps. First, the inmate must file a Request for Administrative Remedy, commonly referred to as a BP-9, with the warden of the facility. 28 C.F.R. § 542.14; *see also Forde v. Miami Fed. Dep't of Corr.*, 730 F. App'x 794, 798 (11th Cir. 2018) (citing Federal Bureau of Prisons Inmate Admission & Orientation Handbook at 41; 28 C.F.R. § 542.14(a)-

542.15(a)). The deadline for completion of the BP-8 and submission of the BP-9 is twenty days from the date of the incident leading to the grievance, although an extension may be granted if the inmate demonstrates a valid reason for delay. *Id*. If the inmate is dissatisfied with the warden's response to the grievance, the inmate may appeal to the Regional Director by filing a Regional Administrative Remedy Appeal or BP-10. 28 C.F.R. § 542.15(a). This appeal must be filed within twenty days of the warden's response to the grievance. *Id*. Finally, if the inmate is dissatisfied with the Regional Director's response, the inmate may appeal to the BOP's Central Office by filing a Central Office Administrative Remedy Appeal, or BP-11. 28 C.F.R. § 542.15(a). This appeal must be filed within thirty days of the Regional Director's response. *Id*. The appeal to the Central Office is the final administrative level of appeal in the BOP. To fully exhaust, an inmate must properly complete each step of the BOP administrative remedy process. *Woodford v. Ngo*, 548 U.S. 81 (2006); *Bryant v. Rich*, 530 F.3d 1368, 1378 (11th Cir. 2008) (citation omitted); *Blevins*, 819 F. App'x at 856. If the inmate does not receive a response within the time allotted for reply at any level, including extension, the inmate may consider the absence of a response to be a denial at that level. 28 C.F.R. § 542.18.

    The BOP uses a computerized system known as SENTRY to log and track inmate grievances as they progress through the administrative remedy process. *See*

ECF No. 13-3 at ¶ 3. Remedies filed at the institutional level are given an identifying number and the suffix "- F." *Id*. at ¶ 6. Appeals of an administrative remedy maintain the same identifying number but receive the suffix "-R" (for BP-10s filed at the Regional Office) or "-A" (for BP-11s filed with the Central Office.) *Id.* If a remedy is rejected, it is returned to the inmate and the inmate is provided with a written notice explaining the reason for the rejection. *Id. (citing* 28 C.F.R. § 542.17(b)).

### B. Legg has not exhausted her administrative remedies.

The Warden has presented uncontroverted evidence, in the form of a declaration signed by Keyshana Murphy, Associate Warden's Secretary/Administrative Remedy Clerk at FCI Tallahassee, and attachments thereto, that Legg has not properly exhausted her administrative remedies as to either of her claims. ECF No. 13-3.

Ms. Murphy states in her declaration dated June 23, 2023, that her review of the SENTRY database reflects Legg has filed only one administrative remedy during her incarceration. ECF No. 13-3 at ¶ 11. In that remedy, a BP-9 filed with the Warden, Legg sought reclassification of her crimes so her FSA eligibility could be reassessed. *Id.* at ¶ 12, ECF No. 13-4 at 3. Contrary to Legg's assertion on the amended petition that the Warden did not respond, the Warden responded to her administrative remedy and denied Legg's request for reclassification. ECF No. 13-

3 at ¶ 13; ECF No. 13-4 at 4. Legg was advised of her right to appeal the decision to the Regional Director, but she did not do so. ECF No. 13-3 at ¶ 14; ECF No. 13-4 at 4. Legg filed no other administrative remedies on any subject. ECF No. 13-3 at ¶¶ 14, 15.

Therefore, because Legg did not properly complete all levels of the BOP's administrative remedy process before filing for habeas relief and the Warden has not waived the defense of exhaustion, her petition is subject to dismissal on that basis.

### C. **Legg's Unexhausted Claims are also without Merit**

Although the Warden has established that the amended petition is subject to dismissal for Legg's failure to exhaust her administrative remedies, he also argues Legg's claims are also without merit.

First, Legg's claim she is eligible for FSA credits is without merit because she is statutorily excluded from earning FSA credits while serving a sentence for a conviction relating to unlawful possession or use of a firearm during and in relation to any crime of violence or drug trafficking crime. *See* 18 U.S.C. § 3632(d)(4)(D)(xxii). Legg argues that pursuant to the Supreme Court's decision in *United States v. Taylor*, 142 S. Ct. 2015 (2022),[1] her conviction for aiding and

---

[1] *Taylor* held that attempted Hobbs Act robbery is not a crime of violence under the elements clause of 18 U.S.C. § 924(c)(3)(A) because "it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property." *Taylor*, 142 S. Ct. at 2020.

abetting is not a crime of violence. She raised multiple claims based on *Taylor* in her amended motion under 28 U.S.C. § 2255 in the Middle District of Florida, Case 6:21cv2033-WWB-EJK. In overlapping claims, she asserted that her conviction does not support a 924(c) conviction, that aiding and abetting is no longer a crime of violence, and that bank robbery is categorically not a crime of violence, M.D. Fl. Case 6:21cv2033, ECF No. 26 at 7, 8; ECF No. 26-1 at 2, 4, 6, 8, 10. The Middle District rejected her arguments, finding *Taylor* was inapposite because Legg's convictions were based on her acting as a principal to a *completed* bank robbery, not an *attempted* bank robbery. M.D. Fl. Case 6:21cv2033, ECF No. 35 at 9. In any event, her statutory ineligibility defeats her claim.

Legg's second ground, that her offenses of conviction were misclassified as "violent," and she should be at a Federal Prison Camp rather than a Federal Correctional Institution does not entitle her to relief.

Title 18 U.S.C. § 3621 governs the imprisonment of federally convicted persons. Subsection 3621(b) provides that the BOP shall designate the place of a prisoner's imprisonment. This designation is subject to myriad factors including the inmate's security designation, programmatic needs, mental and medical health needs, among others. The BOP "may designate any available penal or correctional facility that meets minimum standard of health and habitability established by the

Bureau." *Id.* Significantly, "[n]otwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court." *Id.*

Additionally, the Supreme Court has stated that a prisoner does not have a constitutional right to be placed in a particular prison, so long as the conditions of confinement do not otherwise violate the Constitution. *See Meachum v. Fano*, 427 U.S. 215, 224-25 (1976) (finding no due process right exists to be housed in a particular state prison or to a hearing prior to transfer within a state's prison system).

Finally, the Warden has submitted unrefuted evidence that Legg was correctly classified in accordance with BOP regulations, specifically BOP Program Statement 5100.08, CN-1, governing Inmate Security Designation and Custody Classification Manual. Heather Gandy, Management Analyst at the Designation and Sentence Computation Center has submitted a declaration in support of the Warden's position on this issue. ECF No. 13-5. Ms. Gandy, after review of Legg's offense conduct, concluded Legg was correctly classified during her initial designation to the BOP because aiding and abetting a bank robbery and aiding abetting in brandishing a firearm are both "greatest severity" offenses which would not justify her placement at a Minimum-Security Level Facility. *Id.* at ¶¶ 16, 19. Ms. Gandy also noted when Legg requested the transfer to Minimum Security Level, her case was reevaluated.

Based on the time remaining to serve as well as her offense conduct it was determined that Legg was still appropriately placed at a Low Security Level Facility rather than the Minimum-Security Level Facility she sought. *Id.* at ¶¶17-19.

Accordingly, it is respectfully RECOMMENDED:

1. Legg's amended petition under 28 U.S.C. § 2241 (ECF No. 10) be DISMISSED for failure to exhaust her administrative remedies or alternatively DENIED as she is not entitled to relief.

2. The clerk be directed to close the case file.

At Gainesville, Florida on August 15, 2024.

s/ *Midori A. Lowry*
Midori A. Lowry
United States Magistrate Judge

### NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.